## Russel, Appellant, *v.* Woodbury.

*Adverse possession—Title—Restricted occupancy—Easement—Right of way—Prescription.*

1. Where a person purchases a lot of ground and at the time of the purchase has an understanding with the grantor that he may use a strip of land adjoining the land purchased for the purpose of ingress and egress, and for drying clothes, but not to build thereon, the grantee cannot by such restricted occupancy of the strip for over twenty-one years acquire title to it by adverse possession; but if he builds a stone walk on the strip next to his house, and constructs at the street line a brick wall across the strip with a gate therein leading to the walk, and the walk is used for over thirty years openly and adversely, such adverse use will give an easement of a right of way by prescription.

2. Where one uses an easement whenever he sees fit, without asking leave, and without objection, it is adverse.

Argued Dec. 3, 1912. Appeal, No. 68, Oct. T., 1912, by plaintiffs, from decree of C. P. Schuylkill Co., March Term, 1909, No. 4, dismissing bill in equity in case of Annie D. Russel v. W. K. Woodbury, W. K. Woodbury, Administrator d. b. n. c. t. a. of Estate of Andrew Russel, deceased, and E. A. Beddall. Before RICE, P. J., HENDERSON, MORRISON, HEAD and PORTER, JJ. Reversed.

Bill in equity for an injunction.

BECHTEL, P. J., filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. That in the deed from the executors of Andrew Russel to Annie D. Russel, conveying to her the property on Second street in the borough of Pottsville, the property is described as beginning at a point ten feet north of the office building and does not include the ten feet in controversy; and further that ingress and egress to the said property was specifically provided for in the

deed, as follows: "Together with the use of the four feet wide alley on the north side of the lot hereby conveyed in common with the occupants of the premises east of said lot; the cost of keeping said alley in good order and repair to be borne by the parties using said alley in proportion to the number of feet in the respective lots opening into said alley."

2. The executors of Andrew Russel reserved to themselves the right to drain their cesspool or privy belonging to their said office building and which was situated partly on this ten foot space in controversy, through the lot conveyed to the said Annie D. Russel.

3. That Samuel R. Russel had, under the will of Andrew Russel, his father, an equal joint interest with his brothers and sisters in the said brick office building, and in the ten foot open space in controversy, now claimed adversely.

4. That prior to the erection of the three story brick house on the lot so conveyed to Annie D. Russel in 1876, there was a two story frame dwelling house on the lot and a board fence leading from the house along Second street to the brick office building; which said frame building was occupied by the plaintiff as a tenant under the executors of Andrew. Russel, during which time the user of the ten foot open space had its beginning.

5. That when the said three story brick building was erected, no opening for windows or doors was left in the south wall of the said building looking upon or opening into the ten foot space in controversy; but, on the contrary, windows and a door opened to the four foot wide alley on the north of the property, provided as a means of ingress and egress for said lot in the deed to Annie D. Russel.

6. That the origin of the use as alleged by the plaintiff in the bill was permissive and no change in the character of such use· has been shown, nor has such use been shown to have been adverse or exclusive.

7. That Annie D. Russel was the wife of Samuel R. Russel, who is now dead.

8. That Henry Russel, one of the executors of Andrew Russel, deceased, was the agent for plaintiff in the collection of her rents from the three story brick house between 1888 and 1902.

### CONCLUSIONS OF LAW

1. That, under the pleadings and evidence in this case, the use shown by the plaintiff is permissive and not adverse.

2. That it having been shown by the pleadings and the evidence that the use of the alleged right of way began by permission, and the presumption of law is that the same continued to be permissive and not adverse, and the burden was upon the plaintiff to show when, if ever, it became adverse.

3. That adverse possession is not to be made out by inference, but by clear and positive proof; and every presumption is in favor of possession in subordination to the title of the true owner.

*Error assigned* was decree dismissing the bill.

*William Wilhelm,* for appellants.

*C. E. Berger,* with him *Woodbury and Woodbury,* for appellee.

OPINION BY HENDERSON, J., July 13, 1913:

The bill filed in this case involved the right of occupancy by the complainant to a plot of ground about ten feet wide and about thirty-seven feet, ten inches in depth, which is contiguous to a lot owned by the complainant on which is erected a double, three-story brick house. The title to the lot out of which the controversy arises is in trustees under the will of Andrew Russel who in his lifetime owned the land on both sides of the strip referred

to.  The complainant acquired title to her lot from the trustees of the Russel estate in June, 1876, for several years prior to which time she had lived in the house then on the premises with her husband, Samuel Russel, who was a son and devisee of Andrew Russel.  Soon after the conveyance to her the complainant erected the brick building now on the lot and at or about the same time caused to be constructed a brick wall along the front of the disputed plot on a line with the front of her brick dwelling and in connection therewith.  This wall took the place of a board fence which had theretofore existed on the same location.  A gate was constructed in the brick wall at the end connecting with the house and a stone walk laid two and one-half or three feet wide along the north side of the vacant ground and next to the complainant's house.  A walk had existed in the same location, in connection with the house which Mrs. Russel tore down after she purchased in 1876, which was used for ingress and egress to and from the kitchen of the house then on her lot.  The space between the stone walk and the south line was used at times as a flower garden and at times as a place in which to dry clothes.  Immediately south of this vacant space was a brick office building belonging to Andrew Russel, and a part of his estate at the time of his death.  The case as set forth in the bill is based on two claims: first, that at the time of the conveyance to the complainant it was agreed between her and the grantors that the ten feet space should continue to be a yard for ingress, egress and to dry clothing for the benefit of the complainant, her tenants, heirs and assigns, it being understood, however, that she was not to build up the open space but that that was to remain to give light and air to the windows on the north side of the brick office building; second, that the complainant "had had open, notorious, visible, adverse, continuous, positive and unquestioned possession of this ten feet space for a period of over thirty-two years, using it absolutely as her own in every way but respecting the understanding between her and the executors of the

Andrew Russel estate that she would not close up the same to interfere with the light and air that was also intended to be reserved for the windows on the north side of the brick corner office building." The relief sought was protection against the proposed occupancy by the defendants of the lot described and the destruction of the brick wall and gate along the street line. It was not disputed that the complainant had built the wall in front of the lot and the sidewalk leading to the rear of her house and that this walk had been used by the complainant and her tenants substantially as charged in the bill for more than thirty years, and that the remainder of the plot had been used to a greater or less extent by those occupying the complainant's building for the same length of time. It appearing, however, that the use of a footway along the same line had been made by the complainant's husband and his family as tenants under the Russel trustees before they sold the lot to the complainant the learned trial judge was of the opinion that the use of the footway and the remainder of the vacant space was permissive and that under the principle that a tenant cannot acquire any kind of easement by prescription against his landlord—McMasters v. Bell, 2 Penrose & Watts, 180; Bannon v. Brandon, 34 Pa. 263; Phillips v. Phillips, 48 Pa. 178—the plaintiff who was the wife of the tenant could not acquire title adversely. There was no evidence that rent was paid by Samuel Russel from 1872 to 1876 when the complainant acquired title, nor is there evidence of a lease of the premises to Samuel Russel. The proof of the tenancy was the entry in the books of the executors of the decedent of a charge for rent against Samuel which seems to have been adjusted in the distribution of portions of the estate. The allegation of a grant or understanding or arrangement between the complainant and the grantors at the time the complainant received the deed for her lot that she was to have the use and enjoyment of the open space, subject to the restriction and limitation that it was not to be built on, was not supported by evidence and the

case must stand, therefore, on the claim of a prescriptive right. In view of the averments of the seventh and eighth paragraphs of the bill it seems impossible to view the case as one in which an absolute title to the land could be acquired by the use of the property as set forth. Title by adverse possession is not to a limited estate; the right goes against all the interest of the holders of the legal title. An estate which carries with it the obligation of the owner that the land shall not be used except in a particular and greatly restricted way, lacks the elements of a good title under the statute of limitations. The complainant having pleaded that she only had a qualified enjoyment of the property and that the right of the owners of the office building to light and air was to be regarded and maintained, it seems evident that the complainant did not assert and maintain the "open, notorious, visible, adverse, continuous, positive and unquestioned possession of this ten feet space" which was necessary to establish a title. Her admission that she was using the lot under an arrangement and understanding which prohibited her from building on it or otherwise using it as her own without let or hindrance from any other person is inconsistent with the claim of title under the statute of limitations. The right to the use of the footway rests upon a somewhat different basis, however. That was not necessarily an exclusive use. Whether the right was appurtenant to the lot which she bought we need not now determine. There is evidence tending to show that it was regularly used by Samuel Russel and his family during the eight years of their occupancy before the complainant purchased. Whether it was used before that does not appear. A plausible argument might be presented to support the position that when the lot was sold to Mrs. Russel with the footway a long time in use the right of enjoyment did not terminate with the transfer of title but passed as an appurtenance to the property sold. Our conclusion does not rest on that view of the case, however. There is undisputed and convincing evidence that

the complainant and those who have been occupying the premises under her for more than thirty years used this footwalk along the side of the house as a passage from the street to the kitchen of the house; that Mrs. Russel constructed the cellar windows in her house with reference to this footwalk; that she constructed the front gate, laid a pavement on the walk and exercised control over it during all this period. By tearing down the old house on her lot and constructing the wall along the open space and setting an iron gate at the corner of the house in connection with the new building which she erected, there was, we think, such an assertion of proprietorship in the use of the walk as would sustain a title to it by prescription. No person denied her right up to the time when the defendants or some of them proposed to occupy the vacant space. Her use of it was open to the observation of the public and particularly to the trustees of the Andrew Russel estate whose office was within a few feet of, and overlooked, the walk. The use of a way by right was defined by Lord Denman in Tickle v. Brown, 4 A. & E. 369, to be an enjoyment had, not secretly, or by stealth, or by tacit sufferance, or by permission asked from time to time on each occasion, or even on many occasions of using it; but an enjoyment had openly, notoriously, without particular leave at the time, by a person claiming to use it without danger of being treated as a trespasser, as a matter of right, whether strictly legal by presumption and adverse user, or by deed confirming the right, or, though not strictly legal, yet lawful to the extent of excusing a trespass. This was said in Pierce v. Cloud, 42 Pa. 102, to be substantially expressive of the common law of ways as held in this commonwealth. Such a use of a way for twenty-one years confers title and is presumed to have been in pursuance of a sufficient grant, and the burden is cast on the owner of the land to show that the use of the easement was under some license, indulgence or special contract inconsistent with the right claimed by the other party. Where one uses an easement

whenever he sees fit without asking leave and without objection it is adverse, Garrett v. Jackson, 20 Pa. 331, and such a use continued without interruption for twenty-one years matures into a right.   There is no pretense that a license was ever given to the complainant to use the way, and her enjoyment of it as disclosed by the testimony is only consistent with the assertion of a right and was hostile to the title of the owner of the fee.   While the complainant has failed, as we view the case, to establish a title by adverse possession to the whole of the vacant ground we regard her right to the easement of way as well established.   There is practically no controversy about the facts, and the complainant's title on this branch of the case is so clear that in a trial at law the judge should hold the evidence sufficient to establish the plaintiff's title. There is a warrant for a proceeding in equity, therefore, as shown in Manbeck v. Jones, 190 Pa. 171; Edgett v. Douglass, 144 Pa. 95.

The decree is reversed, the bill is reinstated and the record remitted to the court below to enter a decree in favor of the complainant to apply to so much of the lot in question as is occupied by the footway leading from the street to the rear of the complainant's house as shown by the evidence, the costs of this appeal to be equally divided between the complainant and the respondent.