## Deeb *v.* Ferris et al., Appellants.

Argued April 15, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadt-feld, Parker, James and Rhodes, JJ.

*Stuart A. Culbertson,* with him *J. Perry Eckels,* for appellants.

*F. Joseph Thomas,* for appellee.

Opinion by Baldrige, J., July 15, 1937:

The plaintiff filed a bill in equity against the defendants, averring that he is the owner of certain real estate situate in the city of Meadville, and the defendants are the owners of adjoining property; that prior to January 10, 1933, a sewer pipe ran from the plaintiff's property through a party wall and connected with defendants' sewer which emptied into the city sewer system; that this connection existed openly, notoriously, continuously, without interruption, and "as a matter of right without objection" from the year

1909 until January 10, 1933, when the defendants unlawfully and without plaintiff's consent severed the pipe. The plaintiff prayed that the court compel the defendants to reconnect the pipe, and assess damages due to loss of rentals and inconvenience to the plaintiff.

The defendants filed an answer, denying the averments in the bill, and alleging that in 1919 they remodelled their building and constructed a large new sewer; that Mike Ferris and George Ferris, then owners of plaintiff's property, requested permission to extend a pipe or sewer from their property through the wall and to make connection to the new sewer on defendants' property, which request was granted. No consideration was paid and the permission to connect the sewer was not for any definite length of time; the defendants could disconnect the sewer any time they saw fit.

The case came on to be heard and the chancellor ordered that the defendants reconnect the sewer and awarded plaintiff damages in the sum of $500. Exceptions to the findings of fact and conclusions of law were overruled.

In this appeal which followed, defendants' first position is that the equity court did not have jurisdiction to find facts in controversy, and that all the issues raised by the pleadings should have been submitted to a jury on the law side of the court.

The question of jurisdiction of the equity court to determine the disputed facts was not raised in any pleading. It is now too late. The Act of June 7, 1907, P. L. 440, §1 (12 PS §1227), provides that "if the defendant desires to question the jurisdiction of the court, upon the ground that the suit should have been brought at law, he must do so by demurrer or answer, explicitly so stating, or praying the court to award an issue or issues to try questions of fact; otherwise, the right of trial by jury shall be deemed to have been waived by

both parties, and the cause shall proceed to a final determination by said court and upon appeal, with the same effect as if upon a hearing before the court, without a jury, upon agreement filed ......" See, also, *Wright et al. v. Barber,* 270 Pa. 186, 113 A. 200; *Tide Water Pipe Co. v. Bell,* 280 Pa. 104, 124 A. 351.

The second question raised by the appellants is that there was insufficient, clear and satisfactory evidence of a continuous, notorious, and adverse use, submitted on behalf of the plaintiff, to establish an easement by prescription.

The principal conflict between the parties is whether the use of the sewer was adverse or by permission. There is no doubt that a permissive use is not adverse and does not create an easement by prescription, no matter how long it may be continued; a mere lapse of time in such circumstances raises no presumption of a grant: *Demuth v. Amweg,* 90 Pa. 181; *Woodbury v. Allan,* 215 Pa. 390, 64 A. 590. It will be noted in the bill that there was no express averment of an "adverse" use—only that it was notorious, continuous, without interruption, and "as a matter of right without objection," from 1909 to 1933. Nor did the chancellor find as a fact that the use was adverse. His ninth finding is as follows: "That this plan or connection of drain or sewer pipe was made during the first half of the year 1909 by, through or under a proper arrangement or agreement entered into by the then owners of the respective properties, and remained in that condition until on or about January 10, 1933." In that event, there was no hostile use. His twelfth finding is: "That the use of these drain or sewer pipes, with their connections, by the respective owners of the properties, including plaintiff and defendants, was open, notorious, continuous and without interruption, under claim of right, by reason of the arrangements, from early in the year 1909 to January 10, 1933." Here,

again, there is no finding in conflict with defendants' contention that the use was permissive.

When we come to the conclusion of law, we observe that the chancellor stated: "2. That the continuous, *adverse* use of the said drain and/or sewer pipe, in its open, known and apparent location, by the plaintiff and his predecessors in title, from the early part of 1909 until January 10, 1933, established such an easement therein, by prescription, in favor of the plaintiff and/or plaintiff's property, as would prohibit interference therewith by defendants." (Italics supplied.) This conclusion is in direct contradiction with the ninth finding of fact above quoted. The chancellor in his "Discussion" states again that the use of the sewer was open, *adverse,* and continuous for a period of more than twenty-one years, and therefore a right of easement in the premises was established.

The plaintiff, to obtain equitable relief, was required to prove an adverse user of this sewer; it is an essential element in establishing an easement by prescription. There should have been a definite finding, either that the use was adverse or that it was not. The averment in the bill of an adverse user, although not as clear or as definite as is desirable, is, we think, sufficiently alleged to permit evidence to be introduced in support thereof: 19 C. J. p. 886; *Fister v. Reitz,* 103 Pa. Superior Ct. 601, 159 A. 83. The testimony relating to the sewer's construction, the conditions under which the connection was made, its use, etc., was conflicting. It was the duty of the chancellor to pass upon the credibility of witnesses, determine the weight to be given their testimony, and make ultimate findings: *Rokeach et al. v. Imperial Metal Polish Co.,* 295 Pa. 366, 145 A. 440.

The last question raised was to the want of sufficient evidence to justify an order directing the defendants to pay the plaintiff damages occasioned by the alleged

unlawful severance of the sewer. If the plaintiff is entitled to an injunction by reason of the defendants' wrongful conduct, damages sustained thereby follow as an incident and may be assessed by a court sitting in equity: *Tide Water Pipe Co. v. Bell,* supra. When retried, the plaintiff's damages should be confined to compensation, to wit, the amount necessary to connect his sewer with the one in the street and to loss of rental that accrued while that was being done.

From what we have said heretofore, it is necessary to return this record to the court below for a definite finding, not only whether there was an open, notorious, and continuous use of this sewer by plaintiff and his predecessors in title, but whether it was adverse.

Decree is reversed; costs of this appeal to await final determination of the cause.